**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| **Horsehead Industries, Inc.,** *et al.*, | ) | **Case Nos.  02-14024 (SMB) through** |
| | ) | **02-14027 (SMB)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

### ORDER APPROVING (I) SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY; (III) AUTHORIZING EXEMPTION FROM TRANSFER, STAMP OR SIMILAR TAXES; AND (IV) GRANTING <u>RELATED RELIEF</u>[1]
(A&F #46B)

This matter came on to be heard by this Court on the renewed Motion (the "<u>Motion</u>") of the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>") for (i) an order (the "<u>Procedures Order</u>"), *inter alia*, (a) fixing the time, date and place for the Auction[2] and the Hearing to authorize the Debtors and certain of their subsidiaries to sell certain of their assets to Horsehead Acquisition Corp. (the "<u>Buyer</u>") or such third party who shall have submitted a Higher and Better Offer in accordance with the Asset Purchase Agreement, dated as of November 18, 2003, between the Debtors and Acquisition (the "<u>Purchase Agreement</u>"); (b) approving the Breakup Fee and bidding procedures contained in the Purchase Agreement (the "<u>Bid Procedures</u>"); (c) approving the form and manner of the notice of the Motion, the Procedures Order, the Bid Procedures, the Auction, the Sale Hearing, the Purchase Agreement

---

[1]  The Findings of Fact and Conclusions of Law contained herein constitute the findings of fact and conclusions of law required to be entered by this Court with respect to the Motion pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

[2]  Any capitalized term not defined herein shall have the meaning ascribed to it in the Purchase Agreement.

and the transactions contemplated therein and thereby (the "Transactions"), including the sale of the Acquired Assets to the Buyer free and clear of all Liens (the "Sale") and the assumption and assignment of certain assumed executory contracts and assumed unexpired leases of non-residential real property (respectively, the "Assumed Executory Contracts" and the "Assumed Leases," a list of which, together with cure amounts, if any, are annexed to this Order as Exhibit "A")[3] to the Buyer free and clear of all Liens (the "Assumption"); and (d) fixing a deadline for objections to the Motion, the Purchase Agreement, the Sale, the Assumption, the Transactions and entry of the Approval Order; and (ii) an Order (the "Approval Order") authorizing (a) the Sale; (b) the Assumption; and (c) the exemption of transfer, stamp or similar taxes; and an Order scheduling a hearing to consider the Procedures Order having been entered by the Court on November 12, 2003 (the "Scheduling Order"); and the Procedures Order having been entered by the Court on November 21, 2003; and it appearing that due and appropriate notice of the Motion, the Procedures Order, the Bid Procedures, the Auction, the Sale Hearing, the Purchase Agreement, the Sale, the Assumption and the Transactions has been provided as provided by the Scheduling Order and the Procedures Order; and it appearing that no other notice of the relief granted by this Order need be given; and the hearing to consider entry of this Order having been held on December 9, 2003 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding entry of this Order and approval of the Sale, the Assumption, the Transactions and the Purchase Agreement; and an Objection to the Motion having been filed by Massey Coal Sales Company, Inc. dated November 20, 2003; and a Limited Objection to the Debtors' Renewed Motion having been filed by Pacific Employers Insurance

---

[3]  Notwithstanding anything to the contrary herein, in the Purchase Agreement, or in any other document made in connection with the Transactions, and not withstanding that the Viacom Agreement is an Assumed Executory Contract, the Debtors are not hereby authorized to assign to Buyer their rights of indemnification with respect to the "DePue Property" (as defined in the Viacom Agreement).

Company, *et al.* dated November 24, 2003; and Objections to Debtors' Motion having been filed by Exxon Mobil Corporation dated December 5, 2003; and an Objection to the Renewed Motion by the Debtors' having been filed by the United States of America dated December 5, 2003; and a Renewed and Limited Objection to the Renewed Motion having been filed by the Official Committee of Retired Employees dated December 5, 2003; and an Objection to Debtors' Renewed Motion having been filed by Union Pacific Railroad Company dated December 5, 2003; and a Limited Objection to Debtors' Renewed Motion having been filed by Consolidated Environmental Management, Inc. dated December 4, 2003; and an agreement in principle among the DIP Lenders and certain of the parties with regard to the professional fees' carve out under the Debtors' Final DIP Financing Order, entered January 9, 2003, having been described by the parties as stated on the record of the Sale Hearing and which shall be the subject of a motion to be filed in these cases; and an agreement in principle by the DIP Lenders and other issues with regard to the consideration to be provided specifically to the general unsecured creditors having been addressed by the parties as stated on the record of the Sale Hearing; and the Purchase Agreement having been amended as set forth on the record and as ordered herein (heretofore referred to as the "Purchase Agreement"); and upon the testimony of Ronald Statile offered at the Sale Hearing and upon the testimony of Nicholas Leone offered at the Procedures Hearing; and upon the record of the Sale Hearing in support of entry of this Order and approval of the Sale, the Assumption, the Transactions and the Purchase Agreement; and the Debtors' having filed a Chapter 11 Plan of Liquidation on December 9, 2003; and due deliberation being had; and this Court being fully advised in the premises; this Court, based upon the testimony and evidence presented to it, hereby makes the following Findings of Fact and Conclusions of Law.

I.  **FINDINGS OF FACT:**[4]

    A.      <u>Basis For Section 363 Sale</u>

        1.  Time is of the essence in consummating the Sale and the Assumption.

        2.  The Acquired Assets, the Assumed Executory Contracts and the Assumed Leases are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

    B.      <u>Notice</u>

        1.  As evidenced by the affidavits of service filed with the Court, a copy of the Motion, the Procedures Order, the Bid Procedures, and the Purchase Agreement was transmitted to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the Bank Group; (iv) counsel to Viacom; (v) counsel to Teachers; (vi) each of the non-debtor parties to the Assumed Executory Contracts and Assumed Leases; (vii) all entities known to the Debtors who have expressed an interest in the Acquired Assets during the last year; (viii) all secured parties of record and any other parties or entities known by the Debtors to assert liens or claims against, or rights or interests in, any or all of the Acquired Assets; (ix) the Internal Revenue Service, the New York State Department of Taxation and Finance and all taxing authorities that may assert liens, claims, or interests in the Acquired Assets or may assert claims as a result of the transfer of the Acquired Assets; (x) all necessary parties to governmental approvals or Permits, if any; (xi) all applicable federal, state, and local regulatory, environmental, and taxing authorities and recording offices that have a reasonably

---

[4] The Court's statements from the bench setting forth additional Findings of Fact and Conclusions of Law in open Court at the Hearing on the Motion are expressly incorporated by reference into this Order and made a part hereof.

known interest in the relief requested in the Motion (including, but not limited to, the United States Environmental Protection Agency, the New York State Department of Environmental Conservation and the Pennsylvania Department of Environmental Protection); and (xii) all parties or entities which have requested notice in the Debtors' Chapter 11 cases or any other parties to whom the Court directed that notice be sent, including but not limited to the Office of the United States Attorney and the Pension Benefit Guaranty Corporation.

2. As evidenced by the affidavit of service filed with the Court, a Notice of the Motion reflecting entry of the Procedures Order was transmitted to all known creditors of the Debtors.

3. Notice of the Motion, the Procedures Order, the Bid Procedures, the Auction, the Sale Hearing, the Sale, the Assumption, the Purchase Agreement, and the Transactions was adequate and sufficient under the circumstances of these Chapter 11 cases and these proceedings and constitutes due, adequate and timely notice in accordance with Bankruptcy Rule 2002, the applicable provisions of the Bankruptcy Code and the procedural due process requirements of the United States Constitution and any requirements for other notice are hereby waived and dispensed with pursuant to Rules 2002, 6006, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code.

C.     **Good Faith Of the Buyer**

1. The Buyer is purchasing the Acquired Assets in good faith and is a good faith purchaser within the meaning of 11 U.S.C. §§ 363(m) and (n), and is therefore entitled to the protection of that provision.

D.       **Competing Offers**

     **1.**   No competing offers were submitted at the Auction.

     **2.**   The sale of the Acquired Assets to the Buyer pursuant to the Purchase Agreement is fair, reasonable and in the best interests of the Debtors, their creditors and their estates.

E.       **No Successor Liability**

     1.   The Buyer does not constitute a successor to the Debtors or their estates.

     2.   The Transactions do not amount to a consolidation, merger or _de facto_ merger of Buyer and the Debtors or their estates.

F.       **Approval of the Motion**

     1.   The Buyer is a third-party purchaser unrelated to the Debtors.

     2.   No brokers were involved in consummating the Sale, the Assumption or the Transactions.

     3.   The terms, as set forth in the Purchase Agreement, are fair and reasonable under the circumstances of these Chapter 11 cases and these proceedings.

     4.   The Motion should be approved as it is in the best interests of creditors.

     5.   The Purchase Agreement represents a fair and reasonable offer under the circumstances of these Chapter 11 cases and these proceedings because of the Debtors' precarious financial condition.

     6.   ~~The Transactions are not being entered into in order to escape liability for the Debtors' debts~~.  **SMB  12/12/03**

G.       **Requisite Authority Miscellaneous**

     1.   The Board of Directors of the Debtors has authorized the Transactions.

H. **Miscellaneous**

      1. To the extent any Findings of Facts set forth in Section I, Paragraphs A-G and all sub-parts thereto, herein constitute Conclusions of Law, this Court so concludes.

II. **CONCLUSIONS OF LAW**

This Court hereby enters the following Conclusions of Law:

A. **Jurisdiction, Final Order And Statutory Predicates**

      1. This Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§157(b)(1) and 1334(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§1408 and 1409.

      2. In the absence of a stay pending appeal, if Buyer closes under the Purchase Agreement at any time on or after the entry of this Order, then, with respect to the Purchase Agreement, Buyer shall be entitled to the protection of Section 363(m) of the Bankruptcy Code if this Order or any authorization contained herein is reversed or modified on appeal. The purchase by Buyer is a purchase in good faith for fair value within the meaning of Section 363(m) of the Bankruptcy Code and Purchaser is entitled to the protection of Section 363(m) of the Bankruptcy Code.

      3. The sale approved by this Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

      4. This proceeding is a "core proceeding" within the meaning of 28 U.S.C. §157(b)(2)(A), (N) and (O).

      5. The statutory predicates for the Motion are Sections 105, 363, 365 and 1146(c) of the Bankruptcy Code and Rules 2002, 6004, 6006, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure.

6. The Sale constitutes a sale of property of the Debtors outside the ordinary course of business within the meaning of Section 363(b) of the Bankruptcy Code.

**B.     <u>Section 363 Sale</u>**

1. The Acquired Assets and the Assumed Executory Contracts and the Assumed Leases are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

2. The provisions of section 363(f) of the Bankruptcy Code have been satisfied.

3. Given all of the circumstances of these Chapter 11 cases and the adequacy and fair value of the purchase price under the Purchase Agreement, the Transactions, the Sale and the Assumption constitute a reasonable and sound exercise of the Debtors' business judgment and should be approved.

**C.     <u>Retention Of Jurisdiction</u>**

1. It is necessary and appropriate for this Court to retain jurisdiction to, <u>inter alia</u>, interpret and enforce the terms and provisions of this Order and the Purchase Agreement and to adjudicate, if necessary, any and all disputes concerning the Assumption (other than any disputes between (a) the Buyer and Viacom under the Viacom Assumption Agreement (b) the Debtors and Viacom under the Viacom Agreement) (c) the Buyer and the Banks under the Letter of Credit Assumption Agreement and the Collateral Documents pursuant or relating thereto and (d) the Buyer and TIAA under the Promissory Notes and Security Agreements relating to or arising from the transfer of the Sinter Facility), any right, title, (alleged) property interest, including ownership claims, relating to the Acquired Assets, the Assumed Executory Contracts (other than any disputes between (a) the Buyer and Viacom under the

Viacom Assumption Agreement and (b) the Debtors and Viacom under the Viacom Agreement) and Assumed Leases and the proceeds thereof, as well as the extent, validity and priority of all Liens relating to the Acquired Assets.

**D.**     **Miscellaneous**

1.   To the extent any Conclusion of Law set forth in Section II, Paragraphs A-C herein constitutes a Finding of Fact, this Court so finds.

**Based on the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

A.     The objections to entry of this Order are overruled, resolved or withdrawn as set forth herein or on the record of the Sale Hearing.

B.     The relief requested in the Motion is granted **SMB 12/12/03 to the extent indicated herein.** ~~and approved in all respects~~.  The Purchase Agreement, the Transactions, the Sale and Assumption are hereby approved in all respects.

C.     The Debtors are authorized and directed to take any and all actions necessary or appropriate to (i) consummate the Transactions, the Sale and the Assumption (including, without limitation, to convey to the Buyer any and all of the Acquired Assets, the Assumed Executory Contracts  and Assumed Leases intended to be conveyed) and the Closing in accordance with the Motion, the Purchase Agreement and this Order; and (ii) perform, consummate, implement and close fully the Transactions, the Sale, the Assumption and the Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement.

D.     The Buyer is not a successor to the Debtors or their estates by reason of any theory of law or equity and the Buyer shall not assume or in any way be responsible for any

Liability (including, without limitation, all Excluded Environmental Liabilities and all Asbestos Liabilities other than the Viacom Environmental Obligations to the extent assumed pursuant to, and subject to the terms of, the Viacom Assumption Agreement) or obligation of the Debtors or their estates, except for the Assumed Liabilities (including the Liens securing the Letter of Credit Obligations under the Collateral Documents pursuant to the Letter of Credit Assumption Agreement and the other Liens under such Collateral Documents).

E.      Nothing in this Order approving the sale of the Acquired Assets or the Purchase Agreement shall: (1) release or nullify any liability under the 1995 Multimedia Consent Decree and the 2003 Consent Decree; (2) release or nullify any liability to a government entity under environmental statutes or regulations that any entity would be subject to as owner or operator of such property; or (3) preclude or prevent a governmental entity from exercising any powers under police and regulatory statutes, or regulations, that would be applicable to any entity as an owner or operator of property, provided that nothing herein shall waive or be deemed to constitute a waiver of any defense to any liability of Buyer under paragraphs (1), (2) or (3) above.

F.      Any and all Acquired Assets in the possession or control of any person or entity, including, without limitation, any former vendor, supplier or employee of the Debtors shall be transferred to the Buyer free and clear of the Liens unless, pursuant to the Purchase Agreement, such person, entity, vendor, supplier or employee may retain temporary possession or control of any of such Acquired Assets, in which case the possession of such item shall be delivered to the Buyer at such time as is designated by the Buyer.

G.      The Debtors are hereby authorized, in accordance with §365(b)(1) and (f)(2) of the Bankruptcy Code, to:   (A) assume the Assumed Executory Contracts and Assumed Leases

listed on Exhibit "A" to this Order; (B) sell, assign and transfer to the Buyer, each of the Assumed Executory Contracts and Assumed Lease in each case free and clear of all Liens (including, without limitation, all Excluded Environmental Liabilities and all Asbestos Liabilities, but excluding (i) the Viacom Environmental Obligations to the extent assumed pursuant to, and subject to the terms of, the Viacom Assumption Agreement and (ii) the Liens securing the Letter of Credit Obligations under the Collateral Documents pursuant to the Letter of Credit Assumption Agreement and the other Liens under such Collateral Documents); (C) execute and deliver to the Buyer, such assignment documents as may be necessary to sell, assign and transfer the Assumed Executory Contracts and the Assumed Leases. Upon Closing, the Debtors will have (i) cured, or have provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Executory Contracts and Assumed Leases listed on Exhibit "A" to this Order, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Executory Contracts and Assumed Leases, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Buyer has provided adequate assurance of its future performance of and under the Assumed Executory Contracts, and Assumed Leases, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

H. The assumption by the Debtor of the Assumed Executory Contracts and the Assumed Leases listed on Exhibit "A" hereto and the assignment of the such contracts to Buyer, as provided for or contemplated by the Purchase Agreement, be, and hereby is, authorized and approved, any existing defaults in these Assumed Executory Contracts and Assumed Leases shall be deemed cured by the payment of the cure amounts listed on Exhibit "A", and the

Assumed Executory Contracts and Assumed Leases shall be in full force and effect and assumed by the Debtor and assigned and sold to Buyer pursuant to Sections 363 and 365 of the Bankruptcy Code subject to and under the Purchase Agreement.

I.     This Court hereby determines that the cure amounts as set forth on Exhibit "A" to this Order, each of which constitutes an allowed claim against the Debtors, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, constitute all of the cure amounts that the Debtors shall be required to irrevocably pay in order to assume and assign the Assumed Executory Contracts and Assumed Leases set forth on Exhibit "A" to this Order.   The Buyer shall, at the Closing, irrevocably pay any cure amounts relating to the Assumed Executory Contracts or Assumed Leases, which payment shall constitute a deduction from the Closing Cash payable to the Sellers.

J.     Notwithstanding any provision in the Purchase Agreement to the contrary, the Viacom Environmental Obligations shall include only those obligations and duties of the Sellers expressly assumed by the Buyer pursuant to the Viacom Assumption Agreement.   Except for the obligations and liabilities to Viacom expressly assumed pursuant to the Viacom Assumption Agreement, Buyer assumes no liability of the Sellers to Viacom.

K.     If any person or entity which has filed statements or other documents or agreements evidencing Liens (other than the Viacom Environmental Obligations to the extent assumed pursuant to, and subject to the terms of, the Viacom Assumption Agreement and the Liens securing the Letter of Credit Obligations under the Collateral Documents pursuant to the Letter of Credit Assumption Agreement) on, or interests in, the Acquired Assets, the Assumed Executory Contracts or the Assumed Leases shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to the Acquired Assets, or the Assumed Executory Contracts or the Assumed Leases, the Debtors are hereby authorized and directed, and the Buyer is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets, the Assumed Executory Contracts and the Assumed Leases.

L.     This Court shall retain **SMB  12/12/03**  ~~exclusive~~ jurisdiction to enforce the provisions of this Order and the Purchase Agreement and to resolve any dispute concerning this Order, the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this Order, including, but not limited to, interpretation of the terms, conditions and provisions thereof, and the status, nature and extent of the Acquired Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the assumption and assignment of the Assumed Executory Contracts and the Assumed Leases  and the transfer of the Acquired Assets hereunder free and clear of all Liens, excluding, however, any disputes between (a) the Buyer and Viacom under the Viacom Assumption Agreement, (b) the Debtors and Viacom under the Viacom Agreement and (c) the Buyer and the Banks under the Letter of Credit  Assumption Agreement and the Collateral Documents pursuant thereto (d) the Buyer and TIAA under the Promissory Notes and Security Agreements relating to or arising from the transfer of the Sinter Facility.

M.     No brokers' commissions are due on account of the Sale, the Assumption or the Transactions.

N.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Transactions.

O.     Section 7.1 of the Purchase Agreement is modified to provide that any indemnification claim of the Buyer shall be subordinated to all unpaid administrative expense claims of all professionals retained in the Debtors' Chapter 11 cases.

P.     Nothing contained in the Purchase Agreement, including Section 2.1(b)(vii) shall be deemed to be **SMB  12/12/03**  ~~as~~ a sale, conveyance, transfer or assignment of any avoidance actions under 11 U.S.C. §§ 547 – 550.

Q.     As additional consideration for the Sale, Buyer shall pay to counsel for the Creditors' Committee an additional $300,000 at the Closing (the "Additional Cash"), with the consent of Viacom.   The Additional Cash will be held by counsel for the Creditors' Committee in escrow for the benefit of the Debtors' general unsecured creditors.   The Additional Cash shall be delivered in settlement of the Committee's objections to the Sale Motion in consideration for Viacom's treatment under the Purchase Agreement, and shall be in the nature of a settlement authorized by Official Committee of Unsecured Creditors v. Stern (In re SPM Manufacturing Corporation), 984 F.2d 1305 (1st Cir. 1993) (the "SPM Settlement").   The Additional Cash shall either be distributed directly to the general unsecured creditors in the event that a plan is not confirmed, or on or after the Effective Date of the Debtors' Chapter 11 Plan, pursuant to such plan.

R.     As additional consideration for the Sale, Buyer shall deliver a promissory note in the principal amount of $1,000,000 to counsel for the Creditors' Committee at the Closing (the "Committee Note"), with the consent of Viacom.   The Committee Note shall be due and payable only prior to the third anniversary of the Closing of the Sale if the average price of zinc during a

period of thirty (30) consecutive days closes at 65 cents or more per metric ton as quoted on the London Metals Exchange. The Committee Note shall be held by counsel for the Creditors' Committee for the benefit of the Debtors' general unsecured creditors. The Committee Note shall be delivered in settlement of the Committee's objections to the Sale Motion, in consideration for Viacom's treatment under the Purchase Agreement, and shall also be part of the SPM Settlement. The proceeds of the Committee Note shall either be distributed directly to the general unsecured creditors in the event that a plan is not confirmed, or on or after the Effective Date of the Debtors' Chapter 11 Plan, pursuant to such plan.

S.      Subject to appropriate documentation and the conditions therein, upon receipt by the Bank Group of an exit fee at such time as all Letters of Credit have expired or been cancelled, terminated or satisfied in full and all Obligations under the Letter of Credit Assumption Agreement have been satisfied and paid in full, the Bank Group shall transfer $300,000 to counsel for the Creditors' Committee (the "Bank Payment"), to be held in escrow by counsel for the Creditors' Committee for the benefit of the Debtors' general unsecured creditors. Such funds shall be delivered pursuant to a settlement relevant to the Committee's objections to the Sale Motion and shall be in the nature of an SPM Settlement. The Bank Payment shall either be distributed directly to the general unsecured creditors in the event that a plan is not confirmed, or on or after the Effective Date of the Debtors' Chapter 11 Plan, pursuant to such plan.

T.      Upon Closing and Viacom's irrevocable and indefeasible receipt of the cash consideration and the execution and delivery of the Viacom Note specified in the Creditor Term Sheet in satisfaction of its allowed claim, without defense, offset, claim or counterclaim, Viacom shall be deemed to withdraw its remaining claims against the Debtors' estates; provided, that,

nothing herein shall affect, or release, the Debtors' obligations under the Viacom Agreement, other than those obligations assigned to Buyer under the Viacom Assumption Agreement.

U.      Upon Closing and TIAA's irrevocable and indefeasible receipt of the Secured Sinter Note and the Teachers Estate Note specified in the Creditor Term Sheet in satisfaction of its allowed and/or administrative claims, without defense, offset, claim or counterclaim, TIAA shall be deemed to withdraw its remaining claims against the Debtors' estates.

V.      The Transaction, the Sale and the Assumption are in contemplation of the Debtors' Chapter 11 Plan of Liquidation filed on December 9, 2003 being confirmed and, accordingly, the transfer of the Acquired Assets, the Assumed Executory Contracts and the Assumed Leases to the Buyer and the Transactions (including, without limitation, the transfer of the Sinter Facility) are exempt under section 1146(c) of the Bankruptcy Code from any transfer, sales, stamp or similar tax in all necessary jurisdictions related to the Sale to the Buyer or the Buyer's wholly owned subsidiaries, **SMB   12/12/03   provided, however, that a plan is confirmed under 11 U.S.C. § 1129.**

W.      This Order and the Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of any Debtor, all non-debtor parties to the Debtors' executory contracts and unexpired leases, all successors and assigns of the Buyer, the Debtors and their affiliates and subsidiaries, the Acquired Assets, and any subsequent trustees appointed in the Debtors' Chapter 11 cases or upon a conversion to Chapter 7 under the Bankruptcy Code and shall not be subject to rejection  Notwithstanding anything in this Order, the Final Order Authorizing Debtors to Obtain Post-Petition Financing entered January 9, 2003, among the Debtors, the Banks parties thereto and JPMorgan Chase Bank, in its capacity as a lender and Administrative Agent, remains in full force and effect..

X.     The Debtors shall serve a copy of this Order on all parties requesting notice pursuant to Bankruptcy Rule 2002.

Y.     This Order shall be effective immediately upon entry pursuant to Rule 7062 and 9014 of the Federal Rules of Bankruptcy Procedure, and no automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, or Rule 6004(g) or 6006(d) of the Federal Rules of Bankruptcy Procedures applies with respect to this Order.

Z.     The provisions of this Order are nonseverable and mutually dependent.

Dated: New York, New York
        December 12, 2003

                                         /s/  STUART M.  BERNSTEIN
                                        Honorable Stuart M. Bernstein
                                        Chief United States Bankruptcy Judge

**EXHIBIT "A"**

**Exhibit "A"**

## MISCELLANEOUS MATERIAL CONTRACTS

| Executory Contract | Cure Amount |
|---|---|
| Coal Supply Agreement entered into by and between Zinc Corporation of America and Pittston Coal Sales Corp., dated effective as of January 1, 1999. (Massey Coal Sales Company, Inc. has succeeded to Pittston Coal Sales Corp.'s rights and obligations under the Coal Supply Agreement.) | $313,250 |
| Agreement between Duquesne Light Company and St. Joe Resources Company entered into as of July 23, 1987 concerning electric power, as amended 12/3/03. | $24,740 |
| EPA Consent Decree entered into by and between the United States of America on behalf of the Administrator of the United States EPA and the Pennsylvania Dept. of Environmental Protection against Horsehead Industries, Inc. and Horsehead Resource Development Company, Inc. effective upon the date of its entry by the court. (11/13/95) | $0 |
| Viacom Settlement Agreement entered into by and between Viacom International Inc. and Horsehead Industries Inc. dated as of February 14, 2002. | $74,189,431 plus prepetition interest[5] |
| Unifirst Corp. Laundry and Supplies Agreement Service Contract with Zinc Corporation of America dated January 9, 2001. | $60,066 |
| Amended And Restated Supply And Option Agreement made and entered into as of December 6, 2003, by and among Mitsui Zinc Powders LLC, formerly known as Mitsui/ZCA Zinc Powders Company, Mitsui Mining & Smelting Holdings (U.S.A.) Inc., Inorgchem Investment, Inc., and Horsehead Industries, Inc. Original Agreement dated August 18, 2002. | $0 |

---

[5] Viacom, Sellers and Buyer agree that the cure amount in respect of the Viacom Settlement Agreement shall not be as stated herein.

| Executory Contract | Cure Amount |
|---|---|
| Amended And Restated License Agreement entered into December 6, 2003 by and between Mitsui Mining And Smelting Co., Ltd., and Horsehead Industries, Inc.  Original Agreement dated August 18, 2002. | $0 |

**EAF PROCESSING (RECYCLING)**

| Executory Contract | Cure Amount |
|---|---|
| AK Steel; HTMR Processing; Agreement, Amendment and Second Amendment; original agreement effective as of October 1, 1995 by and between Armco Inc. and Horsehead Resource Development Company; 2nd amendment made effective as of December 1, 2002 by and between AK Steel Corporation and Horsehead Resource Development Company; contract for processing of EAF Dust generated by AK Steel; 2nd amendment expires November 30, 2004. | $0 |
| Allegheny Ludlum Corporation agreement with Horsehead Resource Development Co.; amendment, 2nd amendment; and 3rd amendment; agreement for processing of EAF Dust 3rd amendment expires December 31, 2003. | $0 |
| Beta Steel Corporation; HTMR Processing; Agreement amendment and 2nd amendment for processing of EAF Dust generated by Beta Steel 2nd amendment expires May 31, 2004.  Contract entered into by and between Beta and HRD. | $0 |
| Bethlehem Steel Corporation HTMR Processing Agreement with Horsehead Resource Development Co. effective as of January 1, 1999, as amended. | $0 |
| Citisteel USA Inc. agreement for HTMR processing entered into by and between Citisteel USA Inc. and Horsehead Resource Development Co. effective December 9, 1996 amendment, 2nd amendment and 3rd amendment; 3rd amendment expires March 31, 2004 | $0 |
| Dofasco Inc. HTMR processing agreement and amendment agreement with Horsehead Resource Development Co. entered into January 1, 2000, amendment expires January 31, 2004 | $0 |
| Ellwood Quality Steels Company agreement, amendment, 2nd amendment & 3rd amendment for HTMR processing effective October 1, 1996 amendment expires October 31, 2005 agreement entered into by and between Ellwood Quality Steels Company and Horsehead Resource Development Co. | $0 |
| Gallatin Steel Inc. agreement, amendment, 2nd amendment & 3rd amendment entered into by Gallatin Steel Inc. and Horsehead Resource Development Co. effective as of March 15, 1995 3rd amendment expires June 30, 2004 | $0 |

| Executory Contract | Cure Amount |
|---|---|
| Georgetown Steel Corporation agreement, amendment, 2nd amendment for HTMR processing entered into October 1, 1996 2nd amendment expires December 31, 2002 contract entered into by Georgetown Steel Corporation and Horsehead Resource Development Company | $0 |
| The International Metals Reclamation Co., Inc. (INMETCO) agreement, amendment, 2nd amendment, 3rd amendment for HTMR processing effective March 1, 1999. 3rd amendment expires January 31, 2005. New contract entered into by and between INMETCO and Horsehead Resource Development Co. | $0 |
| ISPAT Inland Bar Products agreement, amendment, 2nd amendment for HTMR processing with Horsehead Resource Development Co. entered into July 1, 1999. 2nd amendment expires June 30, 2003. | $0 |
| IVACO Rolling Mills Ltd. Partnership agreement for HTMR processing entered into December 1, 2000 expires November 30, 2003 entered into by and between IVACO Rolling Mills Ltd. and Horsehead Resource Development Co. | $0 |
| Kentucky Electric Steel, Inc. HTMR processing agreement and amendment with Horsehead Resource Development Co.; agreement effective as of January 1, 2000; amendment expires December 31, 2003. | $0 |
| Koppel Steel agreement and amendment for HTMR processing agreement entered into February 1, 2001 amendment expires January 31, 2004 | $0 |
| Lone Star Steel Co. agreement, amendment, 2nd amendment and 3rd amendment with Horsehead Resource Development Co. for HTMR processing entered into February 1, 2000; 3rd amendment expires January 31, 2004; | $0 |
| Mac Steel Division Agreement Amendment, 2nd Amendment, 3rd Amendment, 4th Amendment for HTMR processing entered into June 1, 1997. 4th Amendment expires December 31, 2003. Agreement entered into by and between Mac Steel Division and Horsehead Resource Development Company | $0 |
| Marion Steel Company Agreement Amendment, 2nd Amendment, 3rd Amendment, 4th Amendment for HTMR processing entered into May 1, 1997 4th Amendment expires June 30, 2004 Agreement entered into by and between Marion Steel Company and Horsehead Resource Development Company | $0 |

| Executory Contract | Cure Amount |
|---|---|
| North Star Steel Company Agreement Amendment, 2nd Amendment, 3rd Amendment, 4th Amendment, 5th Amendment for HTMR processing entered into March 20, 1995. 5th Amendment expires March 31, 2005. Contract entered into by and between North Star Steel Company and Horsehead Resource Development Company | $0 |
| North Star BHP Steel, LLC Agreement Amendment, 2nd Amendment, 3rd Amendment, 4th Amendment, for HTMR processing entered into March 20, 1996. 4th Amendment expires March 31, 2005 Contract entered into by and between North Star BHP Steel and Horsehead Resource Development Company | $0 |
| North Star Steel – Texas, Inc. Agreement for EAF Processing (recycling) Agreement entered into April 5, 1991. Agreement commences April 5, 1991 continues for 10 years following the completion of a start up of the process facilities and shall be renewed automatically thereafter for successive renewal terms of 1 year each, subject to termination as provided for in the agreement. Agreement entered into by and between North Star Steel – Texas, Inc. and Horsehead Resource Development Company | $0 |
| Standard Steel (Division of Freedom Forge) Agreement, Amendment, 2nd Amendment, 3rd Amendment, with Horsehead Resource Development Co. for HTMR processing entered into November 1, 1994, as amended. | $0 |
| Steel of West Virginia Agreement; Amendment, 2nd Amendment, 3rd Amendment, 4th Amendment with Horsehead Resource Development Co. for HTMR processing entered into September 22, 1997. 4th Amendment expires December 31, 2004. | $0 |
| VM Star Company Agreement with Horsehead Resource Development Co. for HTMR processing entered into June 30, 2002 expires December 31, 2005. | $0 |

**IRM**

| Executory Contract | Cure Amount |
|---|---|
| Lafarge Corporation (Alpena) Purchase Agreement with Stoney Ridge Materials, Inc. for alternative raw metal (ARM) signed by Lafarge Corporation October 26, 2000. | $0 |
| Lafarge Corporation (Paulding) Purchase Agreement with Stoney Ridge Materials, Inc. for alternative raw metal (ARM), | $0 |

## Employee Benefit Plans

| Executory Contract | Cure Amount |
|---|---|
| Aetna Life and Casualty<br>  1. Life Insurance and AD&D<br>  2. Accident & Sickness and Long –Term Disability<br>  3. Dependent Life Coverage | $0 |
| CNA<br>  1. Business Travel & Accident Insurance | $0 |
| Delta Dental of Pennsylvania<br>  1. Dental Insurance | $0 |
| Ceridian<br>  1. Employee Assistance Program<br>  2. Flexible Spending Plan | $0 |
| Eastern Pennsylvania Health Network Insurance Plans. | $0 |
| Highmark Blue Cross Blue Shield  - Health/Vision/Prescription<br>  1. Comprehensive<br>  2. Preferred Provider (PPO)<br>  3. Security Blue – Medicare HMO<br>  4. Select Blue – Point of Service Plan | $0 |
| HMO Illinois – Health Insurance | $0 |
| Highmark Life & Casualty Group – Stop Loss Health Insurance | $0 |

## PERSONAL PROPERTY LEASES

| Executory Contract | Cure Amount |
|---|---|
| IBM Equipment lease at Monaca for computer hardware/software, term lease supplement, supplement #D00980822. | $2,118.13 |
| PH&H/Arval auto lease agreement, lease number 3072, agreement entered into May 12, 1987 by and between Peterson, Howell and Heather, Inc. as lessor and Horsehead Industries, Inc. as lessee and supplement to agreement of lease #3072 dated as of May 19, 1983. | $16.16 |
| GE Capital Rail Services contract entered into by and between GE Capital Rail Services and Horsehead Resource Development Co. | $0 |
| ADT Security Services Contract with Horsehead Resource Development Company Inc. | $0 |
| Avaya Financial Services; Lucent Technologies Inc. and Horsehead Resource Development Co. Purchase Services Agreement. | $0 |
| Pitney Bowes Personal Property Lease of Postage Meter with Horsehead Resource Development Co. dated December 19, 1988 | $0 |
| Relco Locomotive, Inc. Lease Agreement with Horsehead Resource Development Company dated July 20, 1992 | $8,444 |
| Williams Scottsman lease agreement dated 10/22/91 entered into by and between Horsehead Resource Development Co. and Williams Scottsman. | $0 |
| Air Products & Chemicals Inc.; nitrogen product supply agreement dated June 1, 1997 and amended April 2002 between Zinc Corporation of America and Air Products & Chemicals Inc. | $4,990 |
| Anderson Equipment | $0 |
| Equipco Inc. Hyster Lease with Zinc Corporation of America | $0 |

| | |
|---|---|
| PMF Rentals storage trailer rental contract dated 5/26/00 entered into by and between PMF Rentals and Zinc Corporation of America. | $0 |
| Prime Service, Inc. rental agreement with Zinc Corporation of America for rental of two 1050 cfm compressors. | $0 |
| Yale Industrial Trucks forklift lease with Zinc Corporation of America. | $0 |
| Complient emergency oxygen equipment and maintenance agreement dated 3/1/01. | $0 |
| Neopost contract entered into by and between Neopost and Horsehead Industries agreement # 4-1069431 for initial lease of 12 months agreement dated 11/5/01 | $0 |
| PHH Service operating lease agreement entered into May 12, 1997 by and between Peterson, Hower & Heather, Inc. as lessor and Horsehead Industries as lessee for the lease of certain vehicles initial lease term 12 months | $0 |
| PHH Motor Vehicle Fleet Operating Agreement dated 10/1/92. | $0 |
| Safety-Kleen Ltd. Lugger Truck Lease with Horsehead Resource Development Co. | $0 |
| MSA, Inc. copier proposal sent by MSA to Horsehead Resource Development Co. dated October 10, 2000 | $0 |

| | |
|---|---|
| Xerox equipment lease for Xerox 5892F and Xerox DC340SF with Horsehead Industries, Inc. dated 6/7/00.<br>Xerox equipment lease for Xerox 5337AS copier dated 5/1/96;<br>Xerox equipment lease for Xerox DC220C2 dated 8/13/97;<br>Xerox equipment lease for Xerox DC230SLX, DC30SCAN, OC30Mem32 dated 10/9/98;<br>Xerox equipment lease for Xerox DC220C1 DC 220 Simplex dated 5/12/99;<br>Xerox equipment lease for Xerox DC214S 214 Digital W/SDF dated 6/30/99;<br>Xerox equipment lease for Xerox DFC735A dated 7/27/96;<br>Xerox equipment lease for Xerox 7024 (#5L3080041 and 5L3041925) and 7033 (#0D7050572)<br>Xerox equipment lease for Xerox 230 SLX DC30 Scan, DC30 Mem 32 Contract No. 070936404 10/9/98;<br>Xerox equipment lease for Xerox 7042 fax dated 2/11/98;<br>Xerox equipment lease for Xerox Fax Centr Pro745 dated 1/5/98;<br>Xerox equipment lease for Xerox copier #68h437896;<br>Xerox equipment lease for Xerox copier # G4E005037, G8M041886, H7F205731;<br>Xerox equipment lease for Xerox copier 5028 (#68H450723); | $17,900 |

# NON-RESIDENTIAL REAL PROPERTY LEASES

## (CURE IS $0 FOR ALL)

ASSUMED LEASES

| COMPANY | NAME AND ADDRESS OF OTHER PARTIES TO LEASE | DESCRIPTION OF LEASE | DATE OF LEASE |
|---|---|---|---|
| **New York, NY** | | | |
| Horsehead Industries, Inc. (Lessee) | Westchester Avenue Assoc. LLC<br>c/o Simone Development Company, LLC<br>1000 Main Street<br>New Rochelle, NY 10801 | Real Property<br>Office Space at<br>3010 Westchester Avenue<br>Purchase, NY | 10/23/01 |
| Horsehead Industries, Inc (Lessee) | Vantas<br>520 White Plains Road, Suite 500<br>Tarrytown, NY 10591 | Real Property<br>Office Space at<br>Tarrytown, NY 10591 | 10/01/01 |
| **Palmerton, PA** | | | |
| Horsehead Industries, Inc (Lessor) | Micropack Corporation<br>5 Commonwealth Road, Suite 3A<br>Natick, MA 01760 | Real Property | |
| Horsehead Industries, Inc (Lessor) | LaRoche Industries, Inc.<br>1100 Johnson Ferry Road NE<br>Atlanta, GA 30342 | Real Property in Palmerton<br>(Anhydrous Amonia Transfer Station on<br>Palmerton Plant Site) | 4/15/93 |
| **Monaca, PA** | | | |
| Horsehead Industries, Inc (Lessor) | Wireless Dev. Group, LLC<br>1910 Cochran Rd.<br>Pittsburgh, PA 15220 | Real Property/Cell Tower<br>at Monaca Plant Site | 4/11/02 |
| Horsehead Industries, Inc (Lessor) | Hickman, William & Co.<br>Suite 33 | Real Property On-Site | 2/11/83 |

| | Penn Centre West One<br>Pittsburgh, PA 15276 | | |
|---|---|---|---|
| Horsehead Industries, Inc (Lessor) | CSX Transportation<br>500 Water Street J180<br>Jacksonville, FL 32202 | Real Property<br>Licenses/Agreements<br>Pipeline/TRR 010281<br>Roadcrossing Agmt/<br>TRR 011251<br>Pipeline/TRR 011633<br>Pipeline/TRR 012341<br>Wireline/TRR 013351<br>Wireline/TRR 014190<br>Drain Pipe/TRR 014429 | |
| Horsehead Industries, Inc (Lessor) | Mitsui Zinc Powders, LLC<br>300 Frankfort Road, Route 18<br>Monaca, PA 1 5061 | Real Property | 8/18/02 |
| Horsehead Industries, Inc (Lessor) | Center Township Water Authority | Township drinking water wells on plant site<br>(including access) | 11/08/54 &<br>4/30/76 |
| Horsehead Industries, Inc | Pennsylvania Department of Transportation | | |
| Horsehead Industries, Inc (Lessor) | Phil's Towing Company, Inc.<br>1125 Greiner Street<br>Monaca, PA 15061 | Real Property<br>Mooring Facilities | |
| Horsehead Industries, Inc | Conrail (formerly P&LE RR) | License for gas line in railroad right-of-way | |
| **Chicago, IL** | | | |
| Horsehead Resource Development Company, Inc. (Lessee) | Chicago Rail Link, L.L.C.<br>(Formerly Calumet Western Railway Co.)<br>252 Clayton St., 4th Floor<br>Denver, CO 80206 | Real Property for<br>roadway between East 112th & East 114th<br>Streets | 11/26/47 |
| Horsehead Resource Development Company, Inc (Lessee) | Chicago Rail Link, L.L.C.<br>(Formerly Calumet Western Railway Co.)<br>252 Calyton St., 4th Floor<br>Denver, CO 80206 | Real Property | 1/01/89 |
| Horsehead Resource Development Company, Inc | United States of America | Perpetual Easement/Right-of-Way<br>Document #19288 718-Real Property | 10/29/64 |
| Horsehead Resource Development Company, Inc | Commonwealth Edison | Easement for Power Lines<br>Document #20840468 | 5/14/69 |

| | | | |
|---|---|---|---|
| Horsehead Resource Development Company, Inc | Chicago Rail Link, L.L.C. | Ingress/Egress – Entry point into plant Document #7833961 | |
| **Rockwood, TN** | | | |
| Horsehead Resource Development Company, Inc (Lessee) | Carl Gardner Rockwood Iron and Metal Co. PO Box 471 Rockwood, TN  37854 | Real Property/Right-of-Way Access to Plant | 8/09/96 |
| **Beaumont, TX** | | | |
| Horsehead Resource Development Company, Inc (Lessee) | North Star Steel Texas, Inc. Old Highway 90 Beaumont, TX  77662 | Real Property Beaumont, TX Plant Site | 4/09/92 |
| **Bartlesville, OK** | | | |
| Horsehead Industries, Inc. | Kansas Gas Service 7242 West 129th Street P.O. Box 25957 Shawnee Mission, KS  66225 | Real Property/Easement Gas Lines | 6/12/01 |