ANGEL & FRANKEL, P.C.
Attorneys for Debtors and Debtors-in-Possession
460 Park Avenue
New York, NY 10022-1906
(212) 752-8000
Joshua J. Angel, Esq. (JA-3288)
Jeffrey K. Cymbler, Esq. (JC-3261)
Rick A. Steinberg, Esq. (RS-7396)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| HH LIQUIDATING CORP., *et al.*, f/k/a HORSEHEAD INDUSTRIES, INC., *et al.*, | Case Nos. 02-14024 (SMB) through 02-14027 (SMB) |
| Debtors. | Jointly Administered |

-----------------------------------------------------------x

**JOINT MOTION FOR ENTRY OF AN ORDER PURSUANT TO § 105(A)
OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 9024 AND RULE 60 OF THE
FEDERAL RULES OF CIVIL PROCEDURE AUTHORIZING (I) THE DEBTORS TO
ENTER INTO CERTAIN AMENDMENTS TO SALE DOCUMENTS RELATING TO
THE DEBTORS' APPROVED SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS
TO HORSEHEAD ACQUISITION CORP. AND (II) PAYMENT OF FEES AND
<u>EXPENSES INCURRED THEREWITH</u>**

TO: THE HONORABLE STUART M. BERNSTEIN,
    CHIEF UNITED STATES BANKRUPTCY JUDGE:

HH Liquidating Corp. f/k/a Horsehead Industries, Inc., HRD Liquidating Corp. f/k/a Horsehead Resource Development Company, Inc., ZCA Liquidating Corp., f/k/a as ZCA Mines, Inc. and SRM Liquidating Corp. f/k/a Stoney Ridge Materials, Inc., the above-captioned debtors and debtors-in-possession (the "Debtors") along with the Official Committee of Unsecured Creditors (the "Creditors Committee", together with the Debtors, the "Movants"), by this motion (the "Motion"), hereby seek the entry of an order, substantially in the form annexed hereto as Exhibit "A", pursuant to § 105 of the Bankruptcy Code, Bankruptcy Rule 9024 and Fed. Rule

80668_1

Civ. Proc. 60, (i) authorizing the Debtors to enter into certain amendments (the "Amendments") to the sale documents executed in connection with the Debtors' sale of substantially all of their assets to Horsehead Acquisition Corp. (the "Purchaser"), and (ii) authorizing the Debtors' estates' professionals to be compensated by the Purchaser in connection with the services rendered on behalf of the estates in furtherance of the Amendments and this Motion. In connection with the aforesaid, the Movants respectfully represent as follows:

**Jurisdiction**

1. This Court has jurisdiction to consider this Motion and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334 and paragraph L of the Sale Order (defined below).[1] This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. On August 19, 2002, (the "Filing Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court and an order for relief under § 301 of the Bankruptcy Code was entered in their cases (the "Chapter 11 Cases").

3. The Debtors have been authorized to remain in possession of their property and to continue in the operation and management of their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4. Neither an examiner nor a trustee has been appointed in these Chapter 11 Cases. On August 27, 2002 the Office of the United States Trustee for the Southern District of New

---

[1] Paragraph L of the Sale Order states that this Court has jurisdiction to, among other things, (i) enforce the provisions of the Sale Order and the sale documents and (ii) resolve any disputes or issues pertaining thereto.

York (the "U.S. Trustee") appointed the Creditors' Committee. The Creditors' Committee retained the law firm of Blank Rome LLP as its counsel. Since the date of its appointment, Viacom, Inc., Teachers Insurance & Annuity Association of America, and Glencore, Ltd. have resigned from the Creditors' Committee.

**Debtors' Sale of Substantially All of Their Assets**

5. Prior to the Sale, Horsehead Industries, Inc., with its subsidiaries, was the largest zinc producer in the United States. It operated a zinc refinery in Monaca, Pennsylvania, with the capacity to produce up to 180,000 tons of zinc per year, together with a fully integrated 110-megawatt electrical power plant. Horsehead's HRD subsidiary operated recycling facilities which accepted and processed hazardous zinc wastes in Palmerton, Pennsylvania; Rockwood, Tennessee; Calumet, Illinois; and Beaumont, Texas.

6. On November 12, 2003, the Debtors filed a motion to sell substantially all of their assets and assume and assign certain executory contracts and unexpired leases of nonresidential real property (the "Sale")[2] to Purchaser pursuant to a term sheet dated October 31, 2003, which was to be supplemented by an executed asset purchase agreement between the Debtors and Purchaser.

7. On November 18, 2003, the Debtors entered into an asset purchase agreement with Purchaser which delineated the exact terms, provisions and consideration for the Sale. The consideration provided by Purchaser was specifically allocated to various constituents in the following manner:

- J.P. Morgan Chase Bank, CIT Group/Business Credit, Inc., Fleet National Bank, and LaSalle Business Credit, Inc. (the "DIP Lenders"): cash in the

---

[2] With the exception of certain of the Debtors' non-core assets and preference litigation, substantially all of the Debtors' assets were sold to the Purchaser.

amount of $1,400,000 for the cash collateral account and assumption of Debtors' existing letters of credit aggregating $29,238,565;

- Viacom International, Inc. ("Viacom"): $6,000,000 in cash and a Promissory Note in the amount of $12,000,000;

- Teachers Insurance and Annuity Association of America ("TIAA"): Teachers' Estate Note in the amount of $2,500,000 and a Sinter Facility Note in the amount of $16,000,000; and

- Debtors' Estates: $2,000,000 in cash minus cure costs related to assumption and assignment of executory contracts and unexpired leases and an Estate Note in the amount of $4,500,000 (the "Estate Note").[3]

8. Because much of the consideration paid by Purchaser was in the form of assumption of the Debtors' liabilities as well as the incurrence of various note obligations, the DIP Lenders, Viacom, TIAA, and the Debtors (collectively, the "Secured Parties") demanded that such liabilities and notes be secured by all of the assets that were being transferred to Purchaser through the Sale.

9. On December 9, 2003, the Court approved the Debtors' motion to sell its assets to Purchaser and subsequently on December 12, 2003, the Court entered an Order approving the (I) Sale of Certain Assets Free and Clear of All Liens, Claims and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases of Non-Residential Real Property; (III) Authorizing Exemption from Transfer, Stamp or Similar Taxes; and (IV) Granting Related Relief (the "Sale Order").

10. After entry of the Sale Order, the Purchaser, the Debtors and the other interested parties to the transaction worked assiduously towards a sale closing (the "Closing"). Multiple

---

[3] In partial resolution of the Creditors Committee's objection to the Sale, Purchaser agreed to contribute $300,000 in cash and a $1,000,000 contingent note through Viacom to the Debtors' general unsecured creditors and the DIP Lenders agreed to release $300,000 for the benefit of the Debtors' unsecured creditors at such time as the letters of credit are taken out in December 2005. This settlement was accomplished in the nature of a settlement authorized by In re SPM Manufacturing Corporation, 984 F.2d 1305 (1st Cir. 1993).

closing documents were required by and between the Debtors, Purchaser, the DIP Lenders, Viacom, and Teachers in order to properly document the Sale and allocate the consideration provided by the Sale to the respective parties (the "Closing Documents"). The Closing on the Sale occurred on December 23 and 24, 2003.

11. On February 10, 2004, the Court entered an order granting the Debtors' motion to amend the Sale Order to correct certain errors in the Sale Order and clarify certain items that were inadvertently not addressed in the Sale Order.

12. On July 15, 2004, the Court entered an order settling a carveout dispute between the Bank Group, the Debtors, and the estates' professionals and providing for funding of the Debtors' estates through liquidation of non-core assets. This settlement resulted in a prepayment of $2.3 million of the Estate Note by Purchaser, leaving $2.2 million owing on the estate note in favor of the Debtors' estates (the "Remaining Estate Note").

**Relief Requested**

13. After the Closing of the Sale and during 2004, Purchaser transferred certain real estate securing various obligations arising from the Sale to a wholly owned affiliate named Chestnut Ridge Railroad Corp. ("Chestnut Ridge"). Notice of this transfer was not provided to the Secured Parties nor did the Secured Parties consent to the transfer. Such transfer, while inadvertent by the Purchaser, constituted a default of certain covenants under the Letter of Credit Agreement and various secured notes by and between Purchaser and certain of the Secured Parties. Instead of declaring a default which would have accelerated the payment obligations due to the Secured Parties, the Purchaser and the Secured Parties rectified the problems created by the transfer by entering into the Amendments to the Closing Documents. Principally, the intended purpose of the Amendments was to give the Secured Parties liens on the real estate

given to Chestnut Ridge in order to place all of the parties in the same position such parties would have been in had the transfer not occurred. The following Amendments, all of which are dated April 12, 2005, were required to be prepared and executed in order to return the Purchaser and the Secured Parties to the <u>status quo</u> as of the Closing of the Sale:

- First Amendment and Waiver to the Letter of Credit Assumption Agreement between Purchaser and the DIP Lenders;

- Assumption Agreement and schedules thereto adding Chestnut Ridge as party to a Security Agreement dated December 23, 2003;

- Separate guarantees by Chestnut Ridge in favor of the DIP Lenders, Viacom, TIAA, and the Debtors;

- Amendment and Waiver to Promissory Note dated December 23, 2003 between Purchaser and Viacom;

- Amendment and Waiver to Promissory Note dated December 23, 2003 between Purchaser and TIAA;

- Amended and Restated Palmerton Intercreditor Agreement between Purchaser, Chestnut Ridge, the DIP Lenders, Viacom, Teachers, Wilmington Trust Company and the Debtors;

- Global Amendment to the various Closing Documents between Purchaser, Chestnut Ridge, the DIP Lenders, Viacom, Teachers, Wilmington Trust Company and the Debtors;

- Open-End Mortgage, Security Agreement and Assignment of Leases and Rents between Chestnut Ridge and Wilmington Trust Company.

14. The Estate Note provides that Purchaser and the Debtors may amend the Estate Note in writing (§ 9(e)) and that Purchaser would agree to pay or reimburse all reasonable out-of-pocket costs and expenses incurred by the Debtors' estate in connection with, among other things, amendments under the Estate Note or the Closing Documents (§ 9(k)). Thus, arguably, authorization from the Court in order to enter into the amendments or request approval of fees in connection with the Closing Documents may not be necessary. Nevertheless, out of an abundance of caution, the Debtors and the Committee requested and the Secured Parties agreed

that the Debtors would file the instant motion before the Court (i) to authorize the Debtors to enter into the Amendments that were required in order to rectify the issues created by the transfer of real estate to Chestnut Ridge[4], and (ii) to authorize the payment by Purchaser of professional fees and expenses of counsel to the Debtors and the Creditors Committee related to services rendered in connection with the various Amendments and this Motion.[5]

**Reasons For Relief Requested**

15. The Movants submit that approval of the Motion is appropriate for a variety of reasons. First, the Amendments provide a benefit to the Debtors' estates by giving the estates a junior secured lien on the real estate transferred to Chestnut Ridge. Indeed, there is no downside to the Debtors' estates by entering into the Amendments, only a benefit. If the Debtors were not allowed to enter into the Amendments, they would lose the benefit of their junior secured lien in the Chestnut Ridge real estate, which lien was provided to the Debtors' estates on the Closing Date in order to partially secure the Estate Note, and now the Remaining Estate Note.

16. Second, under various Closing Documents, Purchaser was required to file financial statements by April 15, 2005. Thus, it was imperative that the Amendments be drafted and executed by April 15, 2005 in order to allow Purchaser to issue complete and correct financial statements by such deadline. If this important deadline was missed, Purchaser would have faced yet another default under various Closing Documents.

17. Third, while the transfer to Chestnut Ridge created a default under the Letter of Credit Agreement, the Debtors did not have an independent right to declare a default. Under the

---

[4] Because of certain deadlines explained below, the Debtors have already executed the Amendments. This motion essentially seeks entry of an order which essentially sanctions the Debtors' conduct in respect of the Amendments.

[5] Purchaser has already caused payments to be made to the various other professionals of the DIP Lenders, Viacom and TIAA.

80668-1 7

Closing Documents, the estates' right to declare a default was contingent upon the other Secured Parties first declaring a default and accelerating obligations. Thus, the Debtors would not have been able to declare a default and accelerate payment on the Remaining Estate Note for Purchaser's technical default. Also, since payment of the Remaining Estate Note is expected in December 2005,[6] declaration of a default by the estates, even if the estates were allowed to declare a default, would likely not have been in the best interest of the estates because of the potential chaos and litigation that may have ensued by and between the parties to protect their rights and the effect that such declaration may have had on the continuing business of Purchaser. Such consequences were avoided since the Amendments effectively fixed the inadvertent error and as a result, returned the Purchaser and the Secured Parties to the <u>status quo</u> as of the Closing of the Sale.

18. Finally, the Debtors' estates and their creditors will not bear the costs of the Amendments that were required because of the technical default created by the transfer of real estate to Chestnut Ridge. Purchaser has agreed to pay counsel to the Debtors' estates any and all fees and costs incurred in connection with the estates' professionals' review, revisions, and comments to the Amendments. In addition, Purchaser shall pay the fees and costs of the estates' professionals incurred in connection with the drafting and prosecution of this Motion. To that end, on April 12, 2005, Purchaser transferred $30,780.00 to Blank Rome LLP, counsel to the Creditors Committee, to be held in escrow for the benefit of the Debtors and Creditors Committee professionals and which shall be paid if and when the Court grants this Motion. Such

---

[6] The maturity date on the Remaining Estate Note is December 2008. However, the letters of credit which were assumed by Purchaser in connection with the Sale expire in December 2005 and the estates expect payment of the Remaining Estate Note at such time.

80668-1     8

monies represent actual fees incurred to date and estimated fees for the drafting and prosecution of this Motion.[7]

19. For all of the foregoing reasons, in the exercise of their business judgment, the Movants request that the Motion be granted in its entirety.

## Notice

20. The Movants respectfully submit that service of a copy of the Motion upon (a) counsel to the Creditors' Committee, (b) counsel to the agent of the Debtors' Post-Petition Lenders, (c) counsel to Viacom; (d) counsel to TIAA; (e) counsel to Purchaser; (f) the U.S. Trustee, and (h) all entities which have filed a notice of appearance and request for papers in these Chapter 11 Cases would constitute good and sufficient notice of this Motion under Section 102 of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007.

## Memorandum of Law

21. As the relief requested herein is neither novel nor complex, the Movants respectfully request that the requirement for a separate memorandum of law be waived pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b).

22. No previous application for the relief sought herein has been made to this or any other court.

---

[7] If the Court requires, counsel to the Debtors and the Creditors Committee will provide the Court with copies of their time sheets associated with this matter at this juncture. Otherwise, time rendered in respect of the services will be reflected in fee applications to be filed in the future. However, while such time is reflected in fee statements attached to a filed fee application, such fees will not be sought from the Debtors' estates if this Motion is granted.

**WHEREFORE**, the Movants request that this Court enter an Order granting the relief requested in the Motion, and grant such other related relief as is just and proper.

Dated: New York, New York
May 13, 2005

> ANGEL & FRANKEL, P.C.
> Attorneys for Debtors and Debtors-in-Possession
>
> By:  /s/ Joshua J. Angel
>   Joshua J. Angel, Esq. (JA-3288)
>   Jeffrey K. Cymbler, Esq. (JC-3261)
>   Rick A. Steinberg, Esq. (RS-7396)
>   For the Firm
> 460 Park Avenue
> New York, New York 10022-1906
> (212) 752-8000
>
>   -and-
>
> BLANK ROME LLP
> Attorneys for the Creditors' Committee
>
> By:  /s/ Michael Z. Brownstein
>   Michael Z. Brownstein (MB-9379)
>   Rocco A. Cavaliere (RC-8686)
> The Chrysler Building
> 405 Lexington Avenue
> New York, New York 10174
> (212) 885-5000